# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| TYRONE DIGGS,<br><br>    Plaintiff,<br><br>    v.<br><br>RAMON BALOGUN and<br>SHAWN HOLLY,<br><br>    Defendants. | Civil Action No. TDC-15-0535 |

## MEMORANDUM OPINION

Plaintiff Tyrone Diggs, an inmate in the Maryland State Correctional System, has filed this lawsuit against Defendants Correctional Officer Ramon Balogun ("Officer Balogun") and Correctional Officer Shawn Holly ("Officer Holly") pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the First and Eighth Amendments to the United States Constitution. The Office of the Attorney General of Maryland ("the State") has filed a Motion to Dismiss, seeking dismissal of the claims against Defendants in their official capacities. Diggs has filed a Motion for Default Judgment against Officer Holly, who has not filed an Answer or otherwise responded to the Amended Complaint. For the reasons set forth below, the Motion to Dismiss is GRANTED, and the Motion for Default Judgment is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

### I.    Factual Allegations

The following facts are set forth in the Amended Complaint and are taken as true for purposes of resolving both Motions. Between approximately 2009 and 2012, Diggs was

incarcerated at the Maryland Correctional Institution–Jessup ("MCIJ"). During his time at MCIJ, Diggs earned his high school diploma, enrolled in online adult education classes at Anne Arundel Community College, earned certificates of achievement through the Maryland Department of Labor, Licensing, and Regulation, and completed courses in alternatives to violence and victim awareness. He did not experience any major problems with prison guards or other prisoners while housed at MCIJ.

On November 12, 2012, Diggs was transferred to Jessup Correctional Institution ("JCI"), where he was required to share a cell with a member of a criminal gang, Reginald Lewis. On December 23, 2012, Lewis was involved in a fight, outside of Diggs's presence, that caused him to be immediately taken to disciplinary segregation. The next day, prison staff requested that Diggs pack up Lewis's belongings from their shared cell. While doing so, Diggs discovered a bottle of fermented juice behind Lewis's locker. Diggs began to dispose of the contents by flushing them down the toilet. A correctional officer noticed and asked Diggs to leave the cell, handcuffed him, and seized the bottle. A field test revealed the presence of Suboxone, a prohibited substance. Diggs was immediately taken to disciplinary segregation and received Notices of Violation for possession of contraband, possession of an intoxicant, and possession of an intoxicant with intent to distribute. Though Diggs was ultimately cleared of the charges, he remained in segregation for 180 days while his disciplinary case worked its way through the system.

The two separate attacks that form the basis of Diggs's complaint both occurred during his period in disciplinary segregation. First, on February 19, 2013, Officer Balogun physically assaulted Diggs in a JCI hallway. According to Diggs, the attack occurred as another correctional officer was escorting him, handcuffed, to discuss a concern about his cellmate with

other prison staff. Officer Balogun began by threatening and jeering at Diggs and mocking him for his efforts to study the Code of Maryland Regulations ("COMAR") and represent other inmates in disciplinary proceedings. Officer Balogun then attacked Diggs from behind, beating him across the head and face with a fist. Other officers intervened to restrain Officer Balogun, who broke free and continued the assault. Diggs suffered pain and bruising from the attack.

Diggs reported the attack and filed an inmate grievance against Officer Balogun. Other inmates and prison staff began to harass him as a result. In fact, Diggs claims that the second assault on him, by Officer Holly, was directly related to Diggs's reporting of Officer Balogun's attack on him, because Officer Holly worked the same shift as Officer Balogun and was aware of both the assault and subsequent grievance.

While Officer Holly was working, he did not permit Diggs to take the one hour of recreation time to which Diggs believed he was entitled under the COMAR, but he allowed other inmates to take two or three hours of recreation time. On April 12, 2013, Diggs asked about the discrepancy. Officer Holly became confrontational. He began to pace back and forth outside the cell door while threatening Diggs. At one point, it appeared that Officer Holly was going to leave, and Diggs turned his back on the cell door. In fact, Officer Holly was radioing another correctional officer to request that he open Diggs's cell door. Officer Holly then entered Diggs's cell, in violation of prison protocol requiring that two officers be present to escort an inmate from a cell, and approached Diggs, standing so close to him that Diggs could smell his breath. Diggs asked Officer Holly to leave twice. Instead, Officer Holly hit Diggs in the face with an open palm and said, "I should take your ass back in the days of the 'Cut.'" Am. Compl. ¶ 48, ECF No. 36. Diggs fell to the ground, and during the ensuing struggle, Officer Holly punched Diggs in the face repeatedly. When Diggs managed to escape, Officer Holly chased him up the

stairs to the Lieutenant's office, where Officer Holly cornered Diggs and again proceeded to attack and punch him. Diggs again broke away and ran back downstairs, holding his hands above his head and yelling that he was not fighting. He eventually encountered another correctional officer, who handcuffed him. Other prison guards restrained Officer Holly. Diggs immediately reported the incident to Major Harris. He was then taken to the medical unit, where he was given Tylenol for a blood clot in his finger, severe pain, and bruising under his eye.

Officer Holly filed a Notice of Inmate Rule Violation falsely charging Diggs with various violations, including assault or battery on prison staff, disobeying an order, and being in a location without authorization. He claimed that Diggs started the fight by swinging at Officer Holly with a closed fist, a charge that Diggs denies. The charges against Diggs were eventually dismissed.

Diggs, for his part, filed a grievance against Officer Holly. Major Harris also filed an official report summarizing Officer Holly's attack on Diggs, which corroborated Diggs's account. According to Diggs, Officer Holly lost his job as a result of the assault and his falsification of the Notice of Inmate Rule Violation. In addition, Officer Holly was charged with, and pled guilty to, second degree assault in connection with the attack.

The grievances against the officers were each dismissed for procedural reasons, and Diggs appealed the dismissals to the Inmate Grievance Office ("IGO"). On October 22, 2013, the IGO held a hearing at which it determined that Diggs's grievances were meritorious. The ALJ awarded Diggs $500 for the assault by Officer Holly and $200 for the assault by Officer Balogun.

## II. Procedural History

Diggs, proceeding *pro se*, filed his Complaint in this Court on February 24, 2015. Following the procedure established in *In re State Prisoner Litigation*, Misc. No. 00-308, Administrative Order 2012-01 (D. Md. Apr. 27, 2012), the Clerk transmitted a copy of the Complaint to the Correctional Litigation Unit of the Office of the Attorney General of Maryland and the Litigation Coordinator at JCI. On March 26, 2015, the Litigation Coordinator at JCI accepted service on behalf of Officer Balogun, but not on behalf of Officer Holly, noting that Officer Holly had resigned in July 2014. On April 10, 2015, an Assistant Attorney General entered an appearance on behalf of the State as an "Interested Party." Notice, ECF No. 8.

Officer Balogun filed a *pro se* Answer to the Complaint. The Court directed the State to provide under seal Officer Holly's last known home or business address for purposes of service of process. Using the address provided by the State, the United States Marshal served Officer Holly on November 25, 2015.

On February 16, 2016, the Court appointed counsel to represent Diggs. On August 12, 2016, Diggs filed an Amended Complaint, naming Officer Balogun and Officer Holly as defendants in both their individual and official capacities. Balogun again filed a *pro se* Answer. Although a copy of the Amended Complaint was delivered to Officer Holly's sealed address via Federal Express, Officer Holly failed to file any response. The Amended Complaint was also filed electronically on the Court's CM/ECF system and was thus received by the State in its capacity as an Interested Party. It was not otherwise served on the State pursuant to Federal Rule of Civil Procedure 4.

After Diggs moved for a Clerk's Entry of Default against Officer Holly, an Order of Default was entered. On March 9, 2017, Diggs filed a Motion for Default Judgment against

5

Officer Holly. The same day, Diggs and Officer Balogun requested a Case Management Conference with the Court. After the Court scheduled the conference, the State submitted a letter to the Court stating that the State does not represent Officer Balogun and Officer Holly in their individual capacities, but asserting that the claims against Defendants in their official capacities were barred by the Eleventh Amendment, among other defenses. The State offered to participate in the Case Management Conference and was granted leave to do so. Counsel for Diggs responded with a letter asserting that the State had already been served when the Litigation Coordinator of JCI accepted service of the original Complaint on behalf of Officer Balogun and when the State received the Amended Complaint via CM/ECF.

On March 23, 2017, the State filed the pending Motion to Dismiss seeking dismissal of the claims against Defendants in their official capacities, and a Response to the Motion for Default Judgment opposing a default judgment against Officer Holly in his official capacity only. At the Case Management Conference on March 24, 2017, at the Court's request, the Assistant Attorney General agreed to accept service of the Amended Complaint on behalf of the State for purposes of the official capacity claims against Defendants.

## DISCUSSION

### I. Motion to Dismiss

The State seeks dismissal of the claims against both Defendants in their official capacities because they fail to state a claim and are barred by Eleventh Amendment immunity. Diggs asserts that State's defenses are untimely and have been waived.

#### A. Legal Standard

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the

6

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

B.   Service

As a threshold matter, Diggs argues that the Motion is untimely and that the defenses referenced in the Motion have been waived. The States asserts that it was never properly served, so its arguments that the claims against Defendants in their official capacities should be dismissed are timely. The State is correct that it was never formally served. The original Complaint, filed *pro se*, listed only Officer Balogun and Officer Holly as Defendants. Although it did not specify whether they were named in their individual capacities or official capacities, it sought relief only from those officers and not from the State, any state agency, or any supervisors. Compl., ECF No. 1. It was thus fairly understood to assert claims in the officers' individual capacities. Even if it could be construed as asserting official capacity claims, the Litigation Coordinator of JCI, pursuant to Administrative Order 2012-01, specifically accepted service on behalf of Officer Balogun, but not Officer Holly, and in no way indicated that she was accepting service on behalf of the State. Indeed, the distinction made between Officer Balogun and Officer Holly illustrates this fact, because there would be no reason to draw a distinction if the service related to claims against officers in their official capacities. Finally, when an Assistant Attorney General entered an appearance, she specifically did so as an "Interested Party," not as a Defendant. Notice, ECF No. 8. Thus, there is no basis to claim that the entry of an appearance constituted or acknowledged acceptance of service of the original Complaint. Accordingly, when on August 12, 2016 Diggs's counsel sent via CM/ECF the Amended Complaint asserting claims against the officers in their official capacities as well, that action did

7

not comply with the requirements for service of an original pleading on a defendant under Federal Rule of Civil Procedure 4.

Although not dispositive, it is notable that Diggs's actions in litigation were inconsistent with the position that the State had been served and had failed timely to respond to the Amended Complaint. While Diggs filed a Motion for Default Judgment against Officer Holly for failure to respond to the Amended Complaint, it filed no such motion against the State. Likewise, when Diggs and Officer Balogun submitted a Joint Status Report seeking a Case Management Conference, they acknowledged that the Assistant Attorney General had entered an appearance as "an interested party" without reference to any alleged default by the State. Status Report at 2 n.2, ECF No. 42.

The Court effectively addressed this issue at the Case Management Conference on March 24, 2017, when it sought and received the State's agreement to accept service on behalf of the State on the official capacity claims in the Amended Complaint. In doing so, the Court implicitly determined that (1) service of the State had not yet been effected, and (2) service would be deemed effective as of March 24, 2017. Having considered the parties' additional arguments, it now reaches the same conclusion. Accordingly, the State's Motion to Dismiss filed on March 23, 2017 was timely, such that it has not waived its claims that the State is entitled to Eleventh Amendment immunity or that Diggs has failed to state a claim against the State.

    **C.**    **Official Capacity Claims**

In assessing the State's arguments for dismissal of the official capacity claims, the Court must turn first to the argument that Diggs has failed to state a claim because Defendants acting in their official capacities are not "persons" within the meaning of 42 U.S.C. § 1983. *Vt. Agency of Nat. Res. v. U.S. ex. Rel. Stevens*, 529 U.S. 765, 779 (2000) (finding that the question of whether a statute permits a cause of action against states should be addressed before the question of

whether the Eleventh Amendment bars the cause of action); *Power v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000) (noting that pursuant to *Vermont Agency of Natural Resources*, the district court should have dismissed claims against state officials in their official capacities on the grounds that they were not persons within the meaning of § 1983 rather than on Eleventh Amendment grounds).

Section 1983 makes liable "[e]very person" who, under color of state law, deprives an individual of constitutional rights. 42 U.S.C. § 1983 (2012). Though "state officials literally are persons," a lawsuit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). State officials acting in their official capacity are therefore not "persons" for purposes of § 1983, and are not proper defendants to a § 1983 lawsuit. *See id.*; *see also Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991) (per curiam). The official capacity claims must therefore be dismissed.[1]

Alternatively, the official capacity claims would also be barred pursuant to the Eleventh Amendment. The Eleventh Amendment bars a suit in federal court against a state or against state officials when "the state is the real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984) (barring such a suit "regardless of whether it seeks damages or injunctive relief"). As noted, suits against state officials in their official capacities are the equivalent of suits against the state itself. *See Will*, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself.") (internal citation omitted); *see also Brandon v. Holt*, 369 U.S. 464, 471-72 (1985) (stating that a judgment against a public servant "in his official capacity" imposes liability on the entity

---

[1] The Court notes that even if the State's Motion to Dismiss were deemed untimely, this same argument that the Amended Complaint fails to state a claim could be asserted later in a Motion for Judgment on the Pleadings under Rule 12(c) or at trial. Fed. R. Civ. P. 12(h). Thus, one way or the other, the official capacity claims cannot succeed.

represented). Accordingly, the Eleventh Amendment bars the claims against Officer Balogun and Officer Holly in their official capacities. *See Pennhurst*, 465 U.S. at 101. The Eleventh Amendment not only bars Diggs's claims for damages, but also his claims for declaratory relief against the state. *See Booth v. Maryland*, 112 F.3d 139, 144 (4th Cir. 1997) (stating that declaratory relief is not available in cases where injunctive relief is not available under the Eleventh Amendment). The Court need not, and does not, consider the State's alternative bases for dismissal of these claims.

## II. Motion for Default Judgment

The Motion for Default Judgment asserts that because Officer Holly has failed to respond to this lawsuit, and Diggs has demonstrated that Officer Holly violated his rights under the First and Eighth Amendments, the Court should grant judgment in favor of Diggs and award damages. The Court finds that Officer Holly was properly served with the original Complaint when the summons and Complaint were hand-delivered to his residence, Fed. R. Civ. P. 4(e)(2)(B), and with the Amended Complaint when it was mailed to that location, Fed. R. Civ. P. 5(a)(1)(B), 5(b)(2)(C). Because the Court has concluded that the claims against Officer Holly in his official capacity must be dismissed, the Court considers only the claims against Officer Holly in his individual capacity.

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Under Rule 55(b)(2), after a default has been entered by the clerk, the court may, upon the plaintiff's application and notice to the defaulting party, enter a default judgment. Fed R. Civ. P. 55(b)(2). A defendant's default does not, however, automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *United States v. Moradi*, 673

F.2d 725, 727 (4th Cir. 1982) ("[T]rial judges are vested with discretion, which must be liberally exercised, in entering [default] judgments and in providing relief therefrom."); *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002). The United States Court of Appeals for the Fourth Circuit has a "strong policy that cases be decided on their merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), but default judgment may be appropriate "when the adversary process has been halted because of an essentially unresponsive party," *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005); *see H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970) ("[T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.").

In reviewing a Motion for Default Judgment, the court accepts as true the well-pleaded factual allegations in the complaint relating to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780–81 (4th Cir. 2001). However, it remains for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action. *Id.*; *see also* 10A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2688 (3d ed. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability."). If liability is established, the court must then determine the appropriate amount of damages. *See Ryan*, 253 F.3d at 780-81.

As to damages, the court cannot accept as true the factual allegations of the plaintiff, but must instead make an independent determination. *See Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *Lawbaugh*, 359 F. Supp. 2d at 422.

11

To do so, the court may conduct an evidentiary hearing, *see* Fed. R. Civ. P. 55(b)(2), or may dispense with a hearing if there is an adequate evidentiary basis in the record from which to calculate an award. *See Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.").

Courts generally refrain from entering default judgments in multi-defendant cases alleging joint and several liability in order to avoid inconsistent results. *See Frow v. De La Vega*, 82 U.S. 552, 554 (1872); *United States for the Use of R.F. Hudson v. Peerless Ins. Co.*, 374 F.2d 942, 945 (4th Cir. 1967) ("Where the liability is joint and several or closely interrelated and a defending party establishes that plaintiff has no cause of action or present right of recovery, this defense generally inures also to the benefit of a defaulting defendant." (quoting 6 James Wm. Moore et al., Moore's Federal Practice ¶ 55.06, at 1821 (2d ed. 1965))); *Jefferson v. Briner, Inc.*, 461 F. Supp. 2d 430, 434 & n.5 (E.D. Va. 2006). However, this general rule need not apply where "different results as to different defendants are not logically inconsistent or contradictory." *In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1257-58 (7th Cir. 1980). Where each defendant is potentially liable to the plaintiff based upon his own actions only, there is no possibility for inconsistent results. *See Weft, Inc. v. G.C. Inv. Assocs.*, 630 F. Supp. 1138, 1143 (E.D.N.C. 1986), *aff'd sub nom. Weft, Inc. v. Georgaide*, 822 F.2d 56, 1987 WL 36124 (4th Cir. 1987) (unpublished). Such a circumstance would provide a basis for entry of final judgment against one defendant only that is consistent with both Federal Rule of Civil Procedure 55(a), which generally requires entry of default judgment against "a party" which "has failed to plead or otherwise defend," and Rule 54(b), which permits the court to enter judgment against one defendant upon a finding that "there is no just reason for delay." Fed. R. Civ. P. 55(a), 54(b); *In*

*re Uranium Antitrust Litig.*, 617 F.2d at 1257-58 (citing Rules 55(a) and 54(b) in permitting entry of default judgment against some but not all defendants).

Here, Diggs's claims against Officer Holly are predicated upon Officer Holly's assault and are entirely separate from his claims against Officer Balogun, which are based upon a different assault. The Amended Complaint does not allege that Officer Balogun played any role in Officer Holly's assault, or vice versa. Accordingly, a default judgment for Diggs against Officer Holly would not be inconsistent with any potential judgment against Diggs and in favor of Officer Balogun. Accordingly, the Court considers the Motion. *See In re Uranium Antitrust Litig.*, 617 F.2d at 1257-58.

### B. Eighth Amendment

Diggs alleges that Officer Holly's April 12, 2013 assault violated his rights under the Eighth Amendment in that Officer Holly used excessive force against him not to maintain or restore discipline, but to maliciously and sadistically cause him harm. He claims that he was physically injured as a result of "Officer Holly's unnecessary and wanton infliction of pain." Am. Compl. ¶ 70.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin,* 77 F.3d 756, 761 (4th Cir. 1996). The Eighth Amendment is violated when an inmate is subjected to "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). To establish an Eighth Amendment violation, an inmate must establish both that the prison official subjectively "acted with a sufficiently culpable state of mind" and that the injury or deprivation inflicted was objectively serious enough to constitute a violation. *Williams*, 77 F.3d at 761. On the subjective element, an inmate must show that the guards used force "maliciously or sadistically for the very purpose of causing harm" rather than "in a good faith

13

effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). As for the objective level of harm, although the Eighth Amendment does not prohibit *de minimis* use of physical force, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *See Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9. The extent to which injuries are modest is accounted for in the award of damages. *See Wilkins*, 559 U.S. at 40.

The facts in the Amended Complaint, which the Court takes as true for purposes of deciding the Motion, *see Ryan*, 253 F.3d at 780-81, establish that Officer Holly, without justification, entered Diggs's cell, where he then attacked and beat Diggs. Officer Holly then chased Diggs to different areas of the prison in order to continue his assault. Other officers had to restrain Officer Holly from further harming Diggs. The assault caused Diggs to suffer a blood clot in his finger, bruising near his eye, and "tremendous pain for roughly a week." Am. Compl. ¶ 54. The Amended Complaint further states that the official internal report corroborated Diggs's account, finding that Officer Holly struck Diggs "repeatedly with a closed fist." *Id.* ¶ 55. As a result of the attack, and later falsification of a Notice of Inmate Rule Violation accusing Diggs of instigating the assault, Officer Holly lost his job. He was charged with, and pled guilty to, second degree assault for the attack. Officer Holly has not denied these allegations or raised any defense against them.

With respect to the objective inquiry, Diggs's allegation that Officer Holly beat him repeatedly with a closed fist without justification establishes unnecessary and wanton infliction of pain. The fact that Diggs's injuries were not severe does not preclude this finding. *See Wilkins*, 559 U.S. at 38. As for the subjective inquiry, the Amended Complaint satisfies the requirement that that the plaintiff demonstrate that the prison official "acted with a sufficiently

14

culpable state of mind." *Williams*, 77 F.3d at 761. At the time of the attack, Diggs was locked in his cell. No force was necessary to "maintain or restore discipline." *Hudson*, 503 U.S. at 7. The unjustified assault described in the Amended Complaint was a malicious and sadistic attack that violated contemporary standards of decency. *See id.* at 9. Diggs has thus established that Officer Holly violated his rights under the Eighth Amendment.

### C. First Amendment

Diggs further asserts that Officer Holly's assault violated his rights under the First Amendment because it was perpetrated in retaliation for Diggs's filing of a grievance against Officer Balogun, his questioning of Officer Holly's recreation-time calculations, or both. "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). To state a claim of retaliation for exercising First Amendment rights, a plaintiff must show that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005).

While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," "incarceration does not divest prisoners of all constitutional protections." *Shaw v. Murphy*, 532 U.S. 223, 228-29 (2001). Accordingly, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Specifically, the Fourth Circuit has held that an inmate's "right to file a prison grievance free from retaliation" is protected by the First Amendment. *Booker v. S.C. Dep't of Corrs.*, 855 F.3d 533, 545 (4th Cir. 2017). *See also*

*Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (finding that filing a prison grievance alleging excessive force is protected by the First Amendment); *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (same). Thus, Diggs's filing of a grievance against Officer Balogun was protected activity under the First Amendment.

As for the requirement that the defendant took an action adversely affecting First Amendment rights, plaintiff can establish this element of retaliatory conduct if the defendant took an action that would "deter a person of ordinary firmness from the exercise of First Amendment rights." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (quoting *Constantine*, 411 F.3d at 500). Diggs's assertion that Officer Holly assaulted and beat him satisfies this requirement and indeed goes well beyond the level of severity deemed sufficiently adverse in the Fourth Circuit. *See Martin*, 858 F.3d at 250 (finding that placing an inmate in administrative segregation constitutes an adverse action).

Finally, Diggs must also demonstrate a causal connection between his First Amendment activity and the alleged retaliatory action. *See Constantine*, 411 F.3d at 501. The showing can be based on circumstantial evidence, such as evidence that the defendant was aware of the First Amendment activity and that the retaliation took place within some "temporal proximity" of that activity. *Id.* at 501. Here, Diggs has alleged that Officer Holly worked the same shift as Officer Balogun and was aware of Officer Balogun's attack on Diggs, and that Officer Holly had "disdain" for Diggs's filing of a grievance against Officer Balogun. Am. Compl. ¶ 42. Although Officer Holly's assault on Diggs took place approximately seven weeks after Officer Balogun's actions, it was in sufficient temporal proximity because it occurred during the pendency of the grievance against Officer Balogun and during a time period when Diggs was being harassed and threatened by prison staff and other inmates for reporting Officer Balogun's attack. Diggs has thus sufficiently alleged that Officer Holly's assault was causally linked to Diggs's grievance.

Accordingly, Diggs has alleged sufficient facts to support a default judgment against Officer Holly for violating his rights under the First Amendment. *See Martin*, 858 F.3d at 250.

### D. Damages

A court may award damages as part of a default judgment in a case brought under § 1983. *See, e.g.*, *Webb v. Pearson*, 224 F. App'x 262, 263 (4th Cir. 2007); *Benny v. Pipes*, 799 F.2d 489, 495 & n.8 (9th Cir. 1986). However, to arrive at a damages award, a court may not simply accept as true the factual allegations in the complaint but must make an independent determination of damages based on evidence in the record, whether in the form of testimony taken during an evidentiary hearing or otherwise. *Benny*, 799 F.3d at 489 n.8 (noting that the district court "properly held an evidentiary hearing before awarding damages"); *Lawbaugh*, 359 F. Supp. 2d at 422 ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not.").

Here, Diggs has not provided any evidence to support his claim of damages, nor has he sought an evidentiary hearing. Where a defendant has defaulted but the amount of damages is not readily ascertainable, courts frequently bifurcate liability and damages. *See, e.g.*, *Allison v. Eco-Tech/Ram-Q Indus., Inc.*, 993 F.2d 1535, 1993 WL 177804, at *1 (4th Cir. 1993) (unpublished) (noting that the district court granted a motion for entry of a default judgment as to liability and held a jury trial on the issue of damages only); *DIRECTV, Inc. v. Guzzi*, 308 F. Supp. 2d 788, 790-91 (E.D. Mich. 2004) (granting default judgment as to liability only and ordering limited discovery as to damages); *see also Alstom Power, Inc. v. Graham*, No. 3:15CV174, 2016 WL 354754, at *3 n.5 (E.D. Va. Jan. 27, 2016) (collecting cases); *Calkins v. Pacel Corp.*, No. 3:07CV0025, 2008 WL 2311565, at *1 (W.D. Va. June 4, 2008) (granting default judgment as to liability only, "holding in abeyance the determination of damages and the entry of final default judgment"). Accordingly, having found that Officer Holly violated Diggs's

rights under the Eighth and First Amendments, the Court will grant the Motion as to liability only. The Motion is denied without prejudice as to damages. Within 30 days, Diggs may re-file the Motion as to damages and include such supporting evidence as necessary to establish the amount of damages. If appropriate, Diggs may request a hearing on the issue of damages.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss will be GRANTED. The Motion for Default Judgment is GRANTED IN PART, as to liability, and is DENIED IN PART WITHOUT PREJUDICE, as to damages. A separate Order shall issue.

Date: October 31, 2017

THEODORE D. CHUANG
United States District Judge