# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| TYRONE DIGGS, <br><br> Plaintiff, <br><br> v. <br><br> RAMON BALOGUN and <br> SHAWN HOLLY, <br><br> Defendants. | Civil Action No. TDC-15-0535 |

## MEMORANDUM OPINION

Plaintiff Tyrone Diggs, an inmate in the Maryland State Correctional System, has filed this lawsuit against Defendant Correctional Officers Ramon Balogun and Shawn Holly pursuant to 42 U.S.C. § 1983 alleging violations of his rights under the First and Eighth Amendments to the United States Constitution. Pending before the Court is Diggs's Supplemental Motion for Default Judgment against Officer Holly, who has not filed an Answer or otherwise responded to the Amended Complaint. For the reasons set forth below, the Motion for Default Judgment is GRANTED.

## BACKGROUND

This case arises out of two physical assaults committed by correctional officers against Diggs while he was incarcerated at Maryland Correctional Institution – Jessup ("MCIJ"). The facts underlying this case were detailed in this Court's prior opinion resolving a Motion to Dismiss and Diggs's initial Motion for Default Judgment. *Diggs v. Balogun*, No. TDC-15-0535, 2017 WL 4921690, at *1–2 (D. Md. Oct. 31, 2017), ECF No. 59. As relevant here, Diggs alleges that he was physically assaulted by Officer Balogun on February 19, 2013. After Diggs

reported the attack and filed an inmate grievance against Officer Balogun, other inmates and prison staff began to harass him, culminating in a physical assault by Officer Holly on April 12, 2013. The attack left Diggs with bruises to his head, face, right finger, right arm, and right leg. Since the attack, Diggs has also been diagnosed with post-traumatic stress disorder ("PTSD"), has had difficulty sleeping, and now takes anti-depressants and a sleep aid.

Diggs filed a Complaint in this Court on February 24, 2015, naming Officers Balogun[1] and Holly as defendants. On August 12, 2016, Diggs filed an Amended Complaint, asserting that his rights under the First and Eighth Amendments had been violated. Although he was properly served, Officer Holly failed to respond to either the Complaint or Amended Complaint, prompting Diggs to file his first Motion for Default Judgment.

On October 31, 2017, this Court issued a Memorandum Opinion, granting the motion in part. The Court found that Diggs had established that Officer Holly had violated Diggs's First and Eighth Amendment rights by physically assaulting him in retaliation for his filing a complaint against Officer Balogun. However, Diggs had not provided evidence to support his request for damages. The Court therefore entered default judgment against Officer Holly as to liability and granted Diggs leave to file a second motion for default judgment regarding damages.

---

[1] Officer Balogun has filed an Answer to the Amended Complaint. Although the Court has dismissed the claims asserted against Balogun in his official capacity, *see Diggs*, 2017 WL 4921690, at *4–5, Diggs's personal capacity claims against Balogun remain and are not addressed by this opinion.

2

**DISCUSSION**

The Supplemental Motion for Default Judgment asserts that the Court should, pursuant to its prior grant of judgment in favor of Diggs against Officer Holly, award damages in the amount of $80,638.[2] Diggs has supported this claim by submitting the following documents:

- Declaration of Tyrone Anthony Diggs;

- Inmate Grievance JCI0421-13, filed by Diggs after Officer Balogun's assault;

- *Diggs v. Maryland Div. of Corr.*, No. DPSC-IGO-002V-13-23834 (Md. Office of Admin. Hearings Feb. 12, 2014), a decision in a prison grievance appeal awarding Diggs $200 in compensation for Officer Balogun's assault;

- *Diggs v. Maryland Div. of Corr.*, No. DPSC-IGO-002V-13-38793 (Md. Office of Admin. Hearings. Feb. 12, 2014), a decision in a prison grievance appeal awarding Diggs $500 in compensation for Officer Holly's assault;

- Statement of Charges, *Maryland v. Holly*, No. 1A00273155 (Dist. Ct. Anne Arundel Cty., Md. 2013), reflecting that Officer Holly was charged with second degree assault for attacking Diggs;

- Diggs' prison medical records from the day of Officer Holly's assault;

- Diggs' prison medical records reflecting his anxiety, depression, nightmares, and inability to sleep after the assault;

- A psychological evaluation of Diggs performed by licensed psychologist Dr. R. Hallie Strauss on December 15, 2017; and

- An economic loss report completed by The Kenrich Group, LLC ("Kenrich") on January 29, 2018.

In addition, the Court conducted an evidentiary hearing on July 2, 2018, at which it received testimony by Diggs and Gary Liddicoat, a Principal at Kenrich, who provided a calculation of future out-of-pocket damages arising from Officer Holly's attack.

---

[2] Although the Motion specifically requests $80,683, the underlying figures comprising the request add up to $80,638.

## I.     Legal Standard

A court may award damages as part of a default judgment in a case brought under § 1983. *See, e.g.*, *Webb v. Pearson*, 224 F. App'x 262, 263 (4th Cir. 2007); *Benny v. Pipes*, 799 F.2d 489, 495 (9th Cir. 1986). When reviewing a Motion for Default Judgment, the court accepts as true the well-pleaded factual allegations in the complaint relating to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Once liability is established, the court then determines the appropriate amount of damages. *See Ryan*, 253 F.3d at 780–81. When determining a damages award, however, the court may not simply accept as true the factual allegations in the complaint. *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005). It must instead make an independent determination of damages based on evidence in the record, such as testimony taken during an evidentiary hearing, documentary evidence, or detailed affidavits. *See Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.").

## II.     Damages

### A.     Compensatory Damages

Diggs seeks $20,638 in economic damages and an additional $20,000 for the pain and suffering he experienced and continues to experience as a result of Officer Holly's assault. Having reviewed the evidence and surveyed the damages amounts that have been awarded in comparable cases, the Court agrees with Diggs's valuation.

Diggs seeks economic damages consisting of the cost of treatment for PTSD and lost wages resulting from that condition. Based on her examination of Diggs, Dr. R. Hallie Strauss, a licensed psychologist, diagnosed Diggs with PTSD arising from the assaults against him. Dr.

Strauss recommends that he continue to receive medication for PTSD and that he undergo regular evaluations by a psychiatrist to ensure that he is on an appropriate medication regimen, as it is common to remain on PTSD medication for years. She also recommends that Diggs attend at least 18 to 24 therapy sessions but cautions that many individuals with PTSD require ongoing therapy for years, sometimes even for the rest of their lives. Dr. Strauss concludes that Diggs's PTSD and related treatment would prevent him from working full time until August 2020. Finally, she asserts that Diggs's PTSD symptoms will make it difficult for him to re-enter the workforce, such that Diggs would benefit from participation in a job training program. The Court credits Dr. Strauss's diagnosis and conclusions.

Diggs has submitted estimates of the costs associated with medication, treatment, and resulting loss of work through an expert report authored by Liddicoat, who has over 11 years of litigation consulting experience, degrees in Finance and Economics, and is a certified public accountant. Bearing in mind Diggs's anticipated release in August 2018, Liddicoat estimated the future costs of Diggs's PTSD medication and therapy, based on the assumption that Diggs will need PTSD treatment for the first year after his release. Liddicoat's analysis included a calculation of Diggs's lost wages due to his inability to work a full work week during that time period. The combination of anticipated medical costs and future lost earnings result in a total of $20,638 in economic losses. Having reviewed the expert report and considered Liddicoat's testimony, the Court credits the submitted analysis and will award that amount, which is reasonable in light of the costs associated with treating PTSD. *See Park v. Shiflett*, 250 F.3d 843, 854 (4th Cir. 2001) (awarding $300,000 in future medical expenses to a plaintiff who suffered severe PTSD after being pepper-sprayed and roughly handled during an arrest).

Beyond current and future expenses, Diggs also seeks $20,000 for pain and suffering. Such damages need not be established with "mathematical exactitude" and instead may consist of the factfinder's determination of the amount that fairly compensates the plaintiff. *Hendrickson v. Cooper*, 589 F.3d 887, 892–93 (7th Cir. 2009). The amount, however, must have a rational connection to the evidence. *Id.* at 892. Here, the evidence submitted establishes that Diggs's physical injuries included bruises to his head, face, right finger, right arm, and right leg, and a suspected blood clot in his finger. The MCIJ nurse treated his injuries with Tylenol, which Diggs took for three days. Although Diggs asked to see a doctor, his request was denied.

Although Diggs's physical injuries were limited, the emotional and mental harm was more severe. According to medical records from March and April 2014, more than a year after the attack, Diggs still experienced emotional distress, feelings of anger, depression, and disturbed sleep. As of January 2018, nearly five years after the attack, Diggs affirms that he still does not sleep through the night and takes an antidepressant and a sleeping aid. He experiences nightmares related to the attack "several times per month." Strauss Report at 5, ECF No. 64-3. Once he is released from prison, he intends to see a mental health provider "so that I can process the attacks against me and learn effective coping mechanisms to deal with the lingering stress, anxiety, depression, and distrust of authority." Diggs Aff. ¶ 18, ECF No. 64-2. In recommending continuing medication and therapy, Dr. Strauss states that in the years since he was assaulted, Diggs "re-experiences the event in recurrent flashbacks and nightmares," his "thought patterns have been negatively altered," and he reports "symptoms of hypervigilance and hyperarousal." Strauss Report at 8.

Where the evidence, particularly Dr. Strauss's analysis, shows that Diggs has suffered significant emotional trauma in the form of PTSD that continues to affect Diggs and requires

6

medical attention even years later, the Court concludes that Diggs has established pain and suffering damages of $20,000 beyond the economic damages referenced above. Such an award is in line with other awards arising from PTSD or similar incidents. *See, e.g.*, *Payne v. Jones*, 711 F.3d 85, 88, 106 (2d Cir. 2013) (awarding $60,000 in compensatory damages to a plaintiff who was struck "in the face and neck seven to ten times and knee[d] . . . in the back several times" by an officer, which "aggravated his existing back pain and post-traumatic stress disorder"); *In re Parker Drilling Offshore USA, LLC*, 323 F. App'x 330, 334 (5th Cir. 2009) (finding to be reasonable an award of $200,000 to an oil rig worker for PTSD resulting from having been injured when the rig collapsed and having to jump off the rig and swim to safety); *Hendrickson*, 589 F.3d at 890, 894 (upholding an award of $75,000 in compensatory damages to a prisoner who was grabbed, thrown against a wall, slammed onto a concrete floor, and kneed in the back by a guard, causing back pain); *Johnson v. Dumphy*, No. 09-CV-2758 (ILG), 2011 WL 6101957, at *4 (E.D.N.Y. Nov. 14, 2011) (recommending in a 42 U.S.C. § 1981 claim compensatory damages of $75,000 for a teenager who was physically beaten by adults for 10 to 15 minutes while called racial slurs, sustained bruises, lacerations, and bleeding, was diagnosed with PTSD, and prescribed an anti-depressant); *Lewis v. City of Albany Police Dep't*, 547 F. Supp. 2d 191, 203, 206–09 (N.D.N.Y. 2008) (awarding $65,000 for physical and emotional injuries to a plaintiff after a police officer stood on his head while he was handcuffed and thus "ground plaintiff's face into the pavement" causing "abrasions and a contusion to his face and a closed head injury," "pain and swelling" that "lasted several weeks," and "headaches, difficulty sleeping, and nightmares for months"); *Morales v. City of N.Y.*, No. 99 Civ. 10004, 2001 WL 8594, at *7–10 (S.D.N.Y. Jan. 2, 2001) (awarding $50,000 to a plaintiff who suffered bruises and PTSD due to excessive use of force by a police officer).

The Court will therefore order that Diggs be awarded a total of $40,638 in compensatory damages.

**B. Punitive Damages**

Diggs also seeks $40,000 in punitive damages for Officer Holly's assault. Punitive damages are available in a § 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). While compensatory damages serve to "redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct," punitive damages are "quasi-criminal," a form of "moral condemnation," and "operate as 'private fines' intended to punish the defendant and to deter future wrongdoing." *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001). The United States Supreme Court has provided three "guideposts" for determining the appropriate amount of a punitive damages award: (1) the reprehensibility of the defendant's actions; (2) the disparity between the harm suffered by the plaintiff, measured by the amount of compensatory damages, and the size of the punitive damages award; and (3) the difference between the punitive damages award and the criminal or civil penalties imposed in similar cases. *See BMW of N. America v. Gore*, 517 U.S. 559, 575 (1996); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003); *Morris v. Bland*, 666 F. App'x 233, 240–41 (4th Cir. 2016) (analyzing punitive damages awarded in a § 1983 case using the *Gore* factors).

Applying these factors to Officer Holly's conduct, the Court finds that an award of punitive damages is warranted. First, "the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Gore*, 517 U.S. at 575. Officer Holly's behavior was a repugnant and startling violation of the duties

imposed on correctional officers to maintain a safe and secure prison environment and to protect inmates from harm. Holly engaged in an unprovoked physical attack on Diggs, while he was in his cell and was not a danger to others, in retaliation for Diggs's use of the inmate complaint procedure. Where Holly struck Diggs repeatedly, chased Diggs out of the cell, and eventually needed to be restrained by other guards, his conduct was more than sufficiently outrageous to merit a punitive damages award. At the same time, however, Holly's conduct did not reach the level of reprehensibility attained in some excessive force cases, in that Holly did not use a weapon, outnumber Diggs with multiple attackers, or cause significant physical injuries, and Diggs was not restrained at the time of the assault and was able to, and did, fight back. The Court will therefore adjust the award downward from Diggs's request of $40,000 to $30,000.

Second, an award of $30,000 reflects an appropriate ratio between a punitive damages award and the compensatory damages award, particularly where there is already a significant compensatory damages award of over $40,000. *See Cooper v. Casey*, 97 F.3d 914, 919–20 (7th Cir. 1996) (noting that a higher ratio of punitive to compensatory damages is warranted when the compensatory damages award is small). While there are no bright-line rules on this matter, awards "exceeding a single-digit ratio between punitive and compensatory damages" are rarely appropriate. *Campbell*, 538 U.S. at 425. Here, a $30,000 punitive damages award that results in a ratio well below 1:1 is safely within this limitation.

Third, an award of $30,000 is reasonable in light of the criminal and civil penalties imposed for similar conduct. Officer Holly was charged with, and pleaded guilty to, second-degree assault in connection with the attack, a conviction punishable by up to 10 years of imprisonment. *See* Md. Code Ann., Crim. Law. § 3-203 (2002). Courts have awarded larger amounts as punitive damages in civil rights cases with comparable or more severe conduct. *See*

9

*Payne*, 711 F.3d at 88, 106 (awarding punitive damages of $100,000 to a plaintiff who was struck "in the face and neck seven to ten times and knee[d] . . . in the back several times" by an officer, which "aggravated his existing back pain and his post-traumatic stress disorder"); *Hendrickson*, 589 F.3d at 890, 894 (upholding punitive damages of $125,000 to a prisoner who was grabbed, thrown against a wall, slammed onto a concrete floor, and kneed in the back by a guard). At the same time, punitive damages in the range of $20,000 have been awarded against a single officer in a severe case involving a large group of officers attacking two prisoners. *See Cooper*, 97 F.3d at 915–16, 920 (upholding a punitive damages award of $60,000 against seven correctional officers, including $22,500 against a single officer, to a prisoner who was kicked, beaten, and maced by the officers). Against this backdrop, the Court will award $30,000 in punitive damages.

## CONCLUSION

For the foregoing reasons, the Supplemental Motion for Default Judgment will be GRANTED. The Court awards $40,638 in compensatory damages and $30,000 in punitive damages, for a total of $70,638. A separate Order shall issue.

Date: July 6, 2018

THEODORE D. CHUANG
United States District Judge